UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DONALD MOODY,<br>    *Petitioner*,<br>    *v.*<br>COMMISSIONER OF CORRECTION,<br>    *Respondent*. | Civil No. 3:11cv1109 (JBA)<br><br>April 28, 2014 |

**RULING ON AMENDED PETITION FOR WRIT OF HABEAS CORPUS**

Petitioner Donald Moody, who is currently confined at the Cheshire Correctional Institution in Cheshire, Connecticut, commenced this action for writ of habeas corpus pro se pursuant to 28 U.S.C. § 2254. (*See* Am. Pet. [Doc. # 17].) He challenges his state court conviction for murder and assault in the first degree. For the reasons that follow, the amended petition is denied.

**I.    Standard of Review**

A federal court will entertain a petition for writ of habeas corpus challenging a state court conviction only if a petitioner claims that his custody violates the Constitution or federal laws. 28 U.S.C. § 2254(a).

A federal court cannot grant a petition for a writ of habeas corpus filed by a person in state custody with regard to any claim that was rejected on the merits by the state court unless the adjudication of the claim in state court either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The federal law defined by the Supreme Court "may be either a generalized standard enunciated in the Court's case law or a bright-line rule designed to

effectuate such a standard in a particular context." *Kennaugh v. Miller*, 289 F.3d 36, 42 (2d Cir. 2002), *cert. denied*, 537 U.S. 909 (2002). Clearly established federal law is found in holdings, not dicta, of the Supreme Court at the time of the state court decision. *Carey v. Musladin*, 549 U.S. 70, 74 (2006). Second Circuit law which does not have a counterpart in Supreme Court jurisprudence cannot provide a basis for federal habeas relief. *See Del Valle v. Armstrong*, 306 F.3d 1197, 1200 (2d Cir. 2002).

A decision is "contrary to" clearly established federal law where the state court applies a rule different from that set forth by the Supreme Court or if it decides a case differently than the Supreme Court on essentially the same facts. *Bell v. Cone*, 535 U.S. 685, 694 (2002). A state court unreasonably applies Supreme Court law when the court has correctly identified the governing law, but unreasonably applies that law to the facts of the case. The state court decision must be more than incorrect; it also must be objectively unreasonable, "a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

When reviewing a habeas petition, a federal court presumes that the factual determinations of the state court are correct. A petitioner has the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Cullen v. Pinholster*, ___ U.S. ___, 131 S. Ct. 1388, 1398 (2011) (standard for evaluating state-court rulings where constitutional claims have been considered on the merits and which affords state-court rulings the benefit of the doubt is highly deferential and difficult for a petitioner to meet). The presumption of correctness, which applies to "historical facts,

2

that is, recitals of external events and the credibility of the witnesses narrating them" will be overturned only if the material facts were not adequately developed by the state court or if the factual determination is not adequately supported by the record. *Smith v. Mann*, 173 F.3d 73, 76 (2d Cir. 1999) (internal quotation marks and citation omitted).

In addition, a federal court's review under section 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. *Id.* at 1398–99. Because the collateral review of a conviction applies a different standard than the direct appeal, an error that may have supported reversal on direct appeal will not necessarily be sufficient to grant a habeas petition. *Brecht v. Abrahamson*, 507 U.S. 619, 634 (1993).

## II. Factual Background

The jury reasonably could have found the following facts at Petitioner's criminal trial. On November 9, 1994, the two victims, Marquis Clark and Frank Doughty, along with a third individual, were walking along the street. Petitioner was driving a car that was stopped at a traffic light. Petitioner and the victims began shouting at each other. As the victims walked past the rear of Petitioner's car, he aimed a handgun over his shoulder and fired between eight and ten shots through the rear window at the victims. Frank Doughty was shot in the thigh and survived. Marquis Clark was shot in the hand and chest and died from injuries to his heart and lung. The third person returned fire, striking the petitioner in the leg. *See State v. Moody* ("*Moody I*"), 77 Conn. App. 197, 199–200, 822 A.2d 990, 995 (2003).

### III. Procedural Background

In 1999, Petitioner was tried before a jury on charges of murder, assault in the first degree, and carrying a pistol without a permit. The jury found Petitioner guilty of carrying a pistol without a permit but was deadlocked on the other charges. The trial court declared a mistrial on the murder and assault charges. Following a second trial, Petitioner was found guilty of murder and assault in the first degree and sentenced to a total effective term of imprisonment of forty years. *Moody v. Commissioner of Correction* ("*Moody II*"), 108 Conn. App. 96, 98, 105, 946 A.2d 1268, 1269–70, *cert. denied*, 288 Conn. 906, 953 A.2d 649 (2008).

Petitioner raised three issues on direct appeal, arguing that: (1) the trial court refused to admit into evidence the full transcript of a witness' statement to police; (2) the prosecutor committed misconduct during cross-examination and closing arguments; and (3) the trial court failed to investigate whether jurors saw handwritten notes by the prosecutor that were mistakenly given to an alternate juror. The Connecticut Appellate Court affirmed the conviction and the Connecticut Supreme Court denied certification. *Moody I*, 77 Conn. App. at 199, 822 A.2d at 995. Petitioner then filed a petition for writ of certiorari to the United States Supreme Court, which was denied on December 1, 2003. *Moody v. Connecticut*, 540 U.S. 1058 (2003).

Petitioner filed his first state habeas petition on April 16, 2001, while his direct appeal was pending before the Connecticut Appellate Court. In an amended petition

filed by appointed counsel, Petitioner asserted multiple instances of ineffective assistance of trial counsel.  Following a hearing, the state court dismissed the petition.  (*See* Tr. of Mem. of Decision, Resp't's Mem. App. L.)

Although the state court had denied certification to appeal the dismissal, (Resp't's Mem. App. N), Petitioner filed an appeal to the Connecticut Appellate Court.  The appeal addressed only three instances of ineffective assistance of trial counsel:  (1) failure to present available evidence in Petitioner's defense; (2) failure to request a jury charge on the theory of defense of others; and (3) failure to ensure juror impartiality.  The appellate court found no abuse of discretion in the trial court's decision and dismissed the appeal.  *Moody II*, 108 Conn. App. at 99, 105, 946 A.2d at 1270, 1273–74.

While the appeal of the first state habeas action was pending, the petitioner filed a second state habeas action.  On November 5, 2008, appointed counsel filed an amended petition containing three counts.  The first count detailed eight instances of ineffective assistance of counsel in the second trial, the second count asserted ineffective assistance of appellate counsel for the same reasons as stated in the first count.  Finally, in the third count Petitioner alleged that the trial court erred by:  (1) failing to instruct the jury on the lesser included offenses of manslaughter in the second degree and negligent homicide; (2) instructing the jury on the entire statutory definition of intent; and (3) instructing the jury in a prejudicial manner that shifted the burden of proof to the petitioner.  Following a hearing, the court dismissed the first and third counts based on procedural default and denied the petition on the merits as to the second count.  *See Moody v. Warden*, No.

CV044000005, 2009 WL 2231643, at *1–3 (Conn. Super. Ct. June 22, 2009). The trial court's decision was affirmed on appeal and the Connecticut Supreme Court denied certification on April 20, 2011. *See Moody v. Commissioner of Correction* ("*Moody III*"), 127 Conn. App. 293, 295, 14 A.3d 408, 413, *cert. denied*, 300 Conn. 943, 17 A.3d 478 (2011).

IV. **Discussion**

In his amended federal habeas petition, Petitioner challenges his conviction on the following three grounds: (1) ineffective assistance of trial counsel for failing to call and investigate consistent eyewitness testimony and failing to request a self-defense instruction that included defense of others; (2) ineffective assistance of appellate counsel for failing to properly raise trial court instructional error on intent, consciousness of guilt and self-defense, which instructions shifted the burden of proof to the petitioner to prove self-defense and diluted the state's burden of proof; and (3) prosecutorial misconduct during cross-examination and closing argument. (*See* Am. Pet. at 3–4.)

A. **Ineffective Assistance of Counsel**

An ineffective assistance of counsel claim is reviewed under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). This standard applies to claims of ineffective assistance of trial and appellate counsel. *See Evitts v. Lucey*, 469 U.S. 387, 396–97 (1985). To prevail, Petitioner must demonstrate, first, that counsel's conduct was below an objective standard of reasonableness established by prevailing professional norms and, second, that this deficient performance caused prejudice to him. *Id.* at 687–

88. Counsel is presumed to be competent. Thus, Petitioner bears the burden of demonstrating unconstitutional representation. *See United States v. Cronic*, 466 U.S. 648, 658 (1984). To satisfy the prejudice prong of the *Strickland* test, Petitioner must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different"; the probability must "undermine confidence in the outcome" of the trial. *Strickland,* 466 U.S. at 694. The Court evaluates counsel's conduct at the time the decisions were made, not in hindsight, and affords substantial deference to counsel's decisions. *See Rompilla v. Beard*, 545 U.S. 374, 381 (2005). To prevail, Petitioner must demonstrate both deficient performance and sufficient prejudice. *See Strickland*, 466 U.S. at 700. Thus, if the Court finds one prong of the standard lacking, it need not consider the remaining prong.

Although it did not cite Supreme Court law in analyzing these claim, the state court applied the standard established in *Strickland*. *See Early v. Packer*, 537 U.S. 3, 8 (2002) (state court need not cite Supreme Court law "so long as neither the reasoning nor the result of the state-court decision contradicts them"). Because the state court applied the correct legal standard, the state court decision cannot meet the "contrary to" prong of section 2254(d)(1). The Court will consider the last reasoned state court decision to determine whether the decision is an unreasonable application of federal law. *See Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991). Here, the Court reviews the rulings of the Connecticut Appellate Court affirming the denial of the two petitions for writ of habeas corpus.

*1.     Trial Counsel*

Petitioner asserts two instances of ineffective assistance of trial counsel.  First, Petitioner contends that trial counsel should have called a witness to the shooting at the second trial.  The witness testified that he did not know who had fired the shots because he ducked down in his car when he heard the first shot.  The witness stated, however, that when he looked up after the shooting had ended, he saw one of the individuals on the sidewalk running away and the car following him.  The witness testified that he thought he had just witnessed a drive-by shooting.  The witness also stated that he did not see any of the men on the street with a gun or firing a gun.  The Connecticut Appellate Court considered counsel's decision not to call this witness at the second trial to be a strategic decision within the wide range of acceptable professional assistance.  *See Moody II*, 108 Conn. App. at 101, 946 A.2d at 1271.

A review of the witness' testimony in the first trial supports trial counsel's decision not to call him at the second trial.  The witness did not see who fired any of the gunshots and did not see any of the men on the sidewalk with a gun.  Further, his characterization of the incident as a drive-by shooting suggests that Petitioner was the aggressor.  Petitioner argues that the witness' testimony from the first trial supported his version of the incident to the extent that the witness agreed with Petitioner as to the initial location of the men on the sidewalk.  Most of the witness' testimony, however, was either neutral, in that he did not see who fired any shots, or negative, suggesting that Petitioner instigated the shooting.  Based on the facts presented to the state habeas court, which

facts this Court presumes are correct, this Court concludes that the Connecticut Appellate Court's determination that Petitioner failed to show that trial counsel's failure to call this witness constituted deficient performance was a reasonable application of Supreme Court law.

Second, Petitioner contends that trial counsel should have requested a jury instruction on self-defense, including defense of others. The Connecticut Appellate Court noted that, after conferring with Petitioner and reviewing both the transcript of the first trial and materials obtained through discovery, trial counsel concluded that there was no factual basis for the charge. During both trials and in his statement to the police, Petitioner stated that he acted in self-defense. Not until his state habeas trial did Petitioner say that he also acted to protect the passenger in his car. The state habeas court concluded that Petitioner had never claimed at the criminal trials that he was protecting his passenger and found that Petitioner instead had acted in a manner that endangered his passenger. Thus, the state habeas court concluded that the record lacked any evidentiary basis for a charge on defense of others. The Connecticut Appellate Court agreed that there was no evidence upon which to base such an instruction and concluded that trial counsel's performance was not deficient. *See id.* at 103, 946 A.2d at 1272.

In his reply brief, Petitioner argues that the Connecticut Appellate Court should not have relied on any statements from trial counsel because trial counsel testified at the habeas trial that he had no recollection of his representation of Petitioner. Petitioner also

argues that if trial counsel had interviewed the passenger in his car, the need for an instruction on defense of others would have been obvious.

In habeas proceedings, federal courts presume that the factual findings of the state court are correct. The presumption encompasses both descriptions of external events and determinations on the credibility of the witnesses providing those descriptions. To overcome the presumption, Petitioner must show that material facts were not adequately developed in the state court or that the state court's factual determination is not adequately supported by the record. *See Smith v. Mann*, 173 F.3d 73, 76 (2d Cir. 1999). The state court at the first habeas trial found that trial counsel reviewed the transcripts of the first trial, spoke with counsel from the first trial, met with Petitioner several times, utilized an investigator and conducted legal research. The state court found that trial counsel did not assert a "defense of others" defense because, after reviewing the transcripts and discovery materials and speaking with Petitioner, he did not see an adequate factual basis for the defense. The defense also was not asserted in the first trial. (*See* Resp't's' App. EE, 3/5/04, at 45–46.) These factual findings support the state court's determination that the decision not to assert a "defense of others" defense was a matter of trial strategy and did not demonstrate ineffective assistance. The state court also noted that at no time during Petitioner's criminal trial did he suggest that he acted to protect the passenger in his vehicle. Petitioner's testimony only indicated that he was protecting himself. Finally, the habeas court found that Petitioner admitted at trial that he took

actions that endangered his passenger. (*See id.* at 50-51.) The Connecticut Appellate Court concurred with this analysis.

In considering a federal habeas petition, the Court does not conduct a de novo review of the claims. The function of the federal court is to determine whether the state court's treatment of the claims was a reasonable application of Supreme Court law. Petitioner, his passenger and trial counsel testified at the trial on the first state habeas petition. The state court credited the testimony of trial counsel, in conjunction with the criminal trial transcripts, over the testimony of Petitioner and his passenger. Petitioner has not presented evidence to overturn those factual findings. Based on the record in the state courts, this Court concludes that the Connecticut Appellate Court applied the correct law and reasonably concluded that trial counsel was not ineffective for failing to assert a "defense of others" defense. Petitioner's argument essentially is that the Connecticut Appellate Court's decision is incorrect. To prevail on a federal habeas petition, however, an incorrect state decision does not warrant relief. Petitioner must show that the decision also is objectively unreasonable. *See Schriro v. Landrigan*, 550 U.S. at 473. Petitioner has not met this standard. The petition for writ of habeas corpus is therefore denied on this ground.

> 2. *Appellate Counsel*

Petitioner argues that appellate counsel was ineffective because he failed to assert claims of instructional error regarding intent, consciousness of guilt, and self-defense. Petitioner presented this same claim in the appeal of his second state habeas action.

In analyzing the claim regarding the instruction on intent, the Connecticut Appellate Court acknowledged that reading the entire definition of intent where only specific intent is at issue is improper. However, the court noted that in such cases, the conviction requiring specific intent generally is upheld because the court also gives a proper instruction on specific intent. *See Moody III*, 127 Conn. App. at 305, 14 A.3d at 418.

Considering the instruction given in Petitioner's second trial, the court noted that the trial court read the full definition only once in the general preliminary instructions. Although the trial court referred back to that definition three times, the language was not repeated. Within the instructions on the specific crimes, the trial court referred to the element of specific intent eleven times when defining murder and three times when defining assault. Reviewing the charge as a whole, the Connecticut Appellate Court concluded that it was not reasonable to find that the jury was misled and, therefore, that the claim possessed no reasonable probability of success on direct appeal. Thus, appellate counsel was not ineffective for failing to raise the claim. *See id.* at 306, 14 A.3d at 419.

The Connecticut Appellate Court also considered Petitioner's claim that appellate counsel's failure to challenge the instructional error caused him prejudice because it diluted the state's burden of proof. Specifically, Petitioner argued that the improper instruction permitted the jury to presume that he was guilty of murder merely by firing his gun, thereby requiring him to prove that he fired in self-defense and relieving the

prosecutor of the burden of disproving that he acted in self-defense. *See id.* at 306–08, 14 A.3d at 419–20.

Along the same lines, Petitioner argued that the improper instruction on intent along with the instruction on evidence of consciousness of guilt allowed the jury to presume that any evasive action he took was evidence of consciousness of guilt. Thus, he was required to prove that he did not take the actions or that the actions were consistent with his theory of self-defense. The Connecticut Appellate Court noted that this claim could succeed only if the general instruction on intent was considered in isolation rather than as part of the whole jury charge. The state court specifically instructed the jury several times that the state was required to disprove self-defense beyond a reasonable doubt. The state court also repeatedly instructed the jury that the prosecutor must prove the actions alleged to demonstrate consciousness of guilt actually occurred and that the actions were influenced by the charged criminal act, not by any other reason that would be consistent with innocence. The trial court emphasized that actions suggesting consciousness of guilt did not raise a presumption of guilt, they were merely circumstantial evidence that the jury could consider. Again, the Connecticut Appellate Court concluded that this claim had no reasonable probability of success on appeal and that the petitioner was not prejudiced by appellate counsel's failure to raise the argument. *See id.* at 308–09, 14 A.3d at 420.

The fact that appellate counsel focused on stronger arguments rather than asserting all possible arguments is not evidence of ineffective assistance. "[T]he process

13

of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)). Thus, if the arguments omitted by appellate counsel were unlikely to succeed, counsel was not ineffective in failing to assert them. *See United States v. Kirsh*, 54 F.3d 1062, 1071 (2d Cir. 1995) (failure to make a meritless argument does not constitute ineffective assistance), *cert. denied*, 516 U.S. 927 (1995).

The burden of proof on a state prisoner regarding a claim of improper jury instruction is substantial.

> The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal. The question in such a collateral proceeding is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process" not merely whether "the instruction is undesirable, erroneous, or even 'universally condemned.'"

*Henderson v. Kibbe*, 431 U.S. 145, 154 (1977) (quoting *Cupp v. Naughten*, 414 U.S. 141, 147, 146 (1973)) (footnote omitted). When conducting its review, a federal court must consider the jury instructions as a whole rather than in isolation. *See California v. Brown*, 479 U.S. 538, 541 (1987).

The Connecticut Appellate Court applied this standard and considered the jury instructions as a whole. The appellate court's analysis of the charge and its possible effect on the jury was a reasonable application of Supreme Court law. Accordingly, the Connecticut Appellate Court reasonably determined that the claims were not likely to

14

succeed and that appellate counsel did not provide ineffective assistance in deciding not to assert those claims. The Court concludes that the amended petition for writ of habeas corpus should be denied on this ground.

### B.      Prosecutorial Misconduct

In his final claim, Petitioner contends that the prosecutor committed misconduct when, during cross-examination, he compelled Petitioner to characterize the veracity of other witnesses and then emphasized Petitioner's response during closing argument.

Prosecutorial misconduct does not give rise to a constitutional violation unless the misconduct so infected the trial with unfairness as to make the resulting conviction a denial of due process. *See Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). That the prosecutor's remarks may have been undesirable, or even universally condemned, does not rise to the level of a constitutional violation, unless the trial also was unfair. *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). Petitioner must identify specific instances of "egregious misconduct," *Donnelly*, 416 U.S. at 647–48, that show he was substantially prejudiced. *United States v. Thomas*, 377 F.3d 232, 244 (2d Cir. 2004). In evaluating a claim of prosecutorial misconduct, a court considers the comments in the context of the entire trial and evaluates "the severity of the misconduct, the measures adopted to cure it, and the certainty of conviction in the absence of the misconduct." *United States v. Shareef*, 190 F.3d 71, 78 (2d Cir. 1999) (citation omitted); *see also United States v. Young*, 470 U.S. 1, 12 (1985) (holding that the court must view prosecutorial misconduct in

context and evaluate the probable effect of the remarks on the jury's ability to judge the evidence fairly).

In analyzing these claims, the Connecticut Appellate Court applied state cases with holdings that mirror the applicable federal law. Because the Connecticut Appellate Court applied the correct legal principles, the decision is not contrary to federal law. *Lurie v. Wittner*, 228 F.3d 113, 127 (2d Cir. 2000), *cert. denied*, 532 U.S. 943 (2001). Thus, the Court considers whether the analysis of the Connecticut Appellate Court was an unreasonable application of federal law.

The Connecticut Appellate court first concluded that the prosecutor committed misconduct when he asked the petitioner whether two witnesses were lying. *See Moody I*, 77 Conn. App. at 213, 822 A.2d at 1002–03. The Connecticut Appellate Court next determined that the misconduct was not invited by, and therefore could not be excused by, any conduct or argument of defense counsel. The appellate court then concluded that the misconduct did not rise to the level of a due process violation. Although the misconduct related to a critical issue in the trial—the credibility of Petitioner's self-defense claim—the Connecticut Appellate Court determined that the misconduct was not central to the issue, because it was limited to two questions. Finally, the court noted that the state had a strong case against Petitioner and that the court specifically instructed the jurors that they were the sole determiners of the witnesses' credibility. *See id.* at 217–18, 822 A.2d at 1005.

In analyzing this claim the state court properly considered the misconduct in the context of the entire trial by evaluating the pervasiveness of the misconduct, the strength of the state's case and the curative measures utilized to cure the misconduct.  This Court concludes that the Connecticut Appellate Court reasonably applied Supreme Court law in analyzing this claim.  Thus, federal habeas relief is not warranted.

V.      **Conclusion**

The amended petition [Doc. # 17] for writ of habeas corpus is DENIED.  Because Petitioner has not shown that he was denied a constitutional right, a certificate of appealability will not issue.  The Clerk is directed to enter judgment and close this case.

IT IS SO ORDERED.

\_\_\_\_\_/s/_____
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 28th day of April, 2014.